# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:02CV62-2-V
### (5:94CR41-01-V)

| | | |
|---|---|---|
| JAMES EDWARD PHIFER,<br>     Petitioner, | )<br>)<br>) | |
| v. | )<br>) | **O R D E R** |
| UNITED STATES OF AMERICA,<br>     Respondent. | )<br>)<br>)<br>) | |

 

**THIS MATTER** is before this Court upon Petitioner's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence . . . "and his amended claim, filed June 3, 2002 and July 26, 2004 (documents ## 1 and 24, respectively); and on the "Government's Response And Motion For Summary Judgment . . . ," filed October 11, 2002 (document # 10).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 1994, a Bill of Indictment was filed charging Petitioner and four others with conspiring to possess with intent to distribute, and to distribute an unspecified quantity of cocaine, in violation of 21 U.S.C. § 846 (Count One), and with having used property to commit or facilitate the commission of a drug offense, thereby making such property subject to forfeiture under 21 U.S.C. § 853 (Count Two) (Case 5:94CR41, document # 1). Petitioner also was charged with two separate counts of money

laundering, in violation of 18 U.S.C. § 1956 (Counts Three and Four), and with one count of money laundering forfeiture under 18 U.S.C. § 982 (Count Five). (Id.). On January 23, 1995, Petitioner appeared before the Court for an arraignment, at which time the Court advised him of the charges and their corresponding penalties. (Id., document # 32). In response, Petitioner asked the Court to enter "not guilty" pleas and requested a jury trial. (Id.).

On July 12, 1995, the Government filed a Superceding Bill of Indictment. (Id., document # 74). That new Indictment modified the conspiracy charge to allege that the five men had trafficked in unspecified quantities of cocaine powder and cocaine base, but the other four charges from the original Indictment remained the same (Id.). In addition, however, the new Indictment included allegations that Petitioner had conducted an illegal gambling business in violation of 18 U.S.C. § 1955(a) (Count Three), and that he had used and carried two firearms and numerous rounds of ammunition during and in relation to a drug trafficking crime, all in violation of 18 U.S.C. § 924(c) (Count Seven). (Id.). On July 27, 1995, the Court arraigned Petitioner on the charges in the Superceding Indictment, at which time he entered "not guilty" pleas to all of the charges and repeated his request for a jury trial. (Id., document # 79).

On October 17, 1995, a jury was selected to try the charges

against Petitioner and co-defendants Corey and John Angle.  Peti-
tioner's other two co-defendants had entered into plea agreements
with the Government and had agreed to testify at his trial.

On October 23, 1995, the jury trial commenced.  The Govern-
ment's theory of the case was that Petitioner and Corey Angle
were central players in a powder and crack cocaine conspiracy
which operated chiefly in Iredell and Rowan Counties United
States v. Phifer, 230 F.3d 113, 117 (4th Cir. 2000) ("Phifer I,"
hereafter).  Law enforcement authorities believed that the
conspiracy had spanned over nearly an eight-year period, had
involved approximately 12 different members and had distributed
as much as thirty kilograms of powder cocaine and three kilograms
of crack.  Id. at 116-17.  Authorities also believed that Peti-
tioner had been involved in the conspiracy since at least March
of 1987.  Id. at 117.

During its case-in-chief, the Government presented testimony
from law enforcement authorities, primarily from the Statesville,
North Carolina area.  Those witnesses' testimony established that
Petitioner was identified as a major cocaine trafficker when, in
March 1987, his bedroom was searched and authorities found
$14,000 in cash hidden in the ceiling of the room, and two guns,
including an "Uzi pistol."  JA 165-66.[1]

In July 1988, an officer found a plastic container on the

---

[1]"JA" refers to the Joint Appendix which was filed by the parties in
Petitioner's direct appeal at the Fourth Circuit Court of Appeals.

side of the road near Petitioner's home.  JA 168.  Said plastic container held another glass jar which contained small plastic bags of powder cocaine.  JA 168-69.  Petitioner's palm-print was on the container which held the cocaine.  JA 172-78.  In March 1990, Petitioner negotiated the sale of half an ounce of cocaine with an undercover law enforcement officer.  JA 138.  That sale was consummated at Petitioner's place of business, Vanderburg's Garage, through the aide of a confidential informant and in the presence of the undercover officer.  JA 138-44.  At the time of the sale, the officer saw Petitioner remove the drugs from his car.  JA 143-44.

The law enforcement testimony also established that during a period of almost two months in late 1993, telephone records for Petitioner's home telephone showed that he made numerous calls from his house to Corey Angle and to J. Lee Sturgis, a co-conspirator who was prosecuted under a different indictment.  JA 283-88.  Telephone records from an additional 10-month period established that there were 94 calls from Petitioner's home to Corey Angle's home and that there were another 40 calls from Petitioner's home to Corey Angle's business.  JA 287-88.

Petitioner was arrested in December 1994.  JA 341.  On that occasion, a search of his home revealed a mini assault rifle, three pistols, two police scanners, over $2,000 in cash and address books with the names of other known drug dealers.  JA

343-48.  Also, pertinent records from the Internal Revenue
Service and the State Employment Security Commission established
that Petitioner did not file federal income tax returns for the
years 1987 through 1994, and that during the relevant period, he
also did not report any wages from his self-employment at
Vanderburg's Garage.  JA 179-81, 185.

The Government also presented testimony from eight eye-
witnesses.  By those witnesses, the Government established that
in late 1988, **Perry J. Knox** – an individual who already had been
prosecuted on drug charges and had completed his sentence at the
time of Petitioner's trial - began purchasing from one up to
three ounces of powder cocaine from Petitioner once or twice per
week.  JA 146, 149.  **Knox** made about 15 such purchases from
Petitioner during about a three-month period.  JA 147.  **Knox**
cooked the powder he got from Petitioner into crack cocaine.  JA
147.

In 1989 and 1990, Petitioner sold **Larry Cartledge** - an indi-
vidual who was prosecuted on drug charges in another case - three
kilograms of powder cocaine on one occasion and another kilogram
of powder cocaine on a subsequent occasion.  JA 61-62 and 68.
**Cartledge** also testified that in the summer of 1990, Petitioner
purchased two cars from him.  JA 63-64.  Petitioner titled the
1984 Corvette and the 1955 Chevrolet pickup truck in the names of
his mother and brother, respectively.  JA 70.  Petitioner pur-

chased another 1955 Chevrolet pickup truck and switched the
license plates on the two trucks.  JA 70.  Such purchases totaled
about $36,000.  JA 64.

From the late 1980s up to June of 1994, Petitioner supplied
**J. Lee Sturgis** and **Sturgis'** partner, **Robert Chambers**, with up to
five ounces of cocaine on a weekly basis.  JA 98-100.  **Sturgis**
also occasionally got cocaine from Petitioner's co-conspirator,
Corey Angle.  JA 104.  Typically, **Sturgis** would call Petitioner
to let him know that he needed to buy cocaine, and the men would
either set up a place to meet to conduct the transaction or
Petitioner would tell Sturgis where he planned to drop off the
cocaine.  JA 101.  Petitioner often hid cocaine for Sturgis in
cans or other containers.  JA 103-04.

**Robert Chambers** - who was prosecuted on drug charges with
**Sturgis** in another case - corroborated **Sturgis'** testimony, stat-
ing that he took delivery of cocaine purchases from Petitioner
and Corey Angle from about 1988 up to 1992 one to two times per
week.  JA 113-14.  **Chambers** also said that Petitioner occasion-
ally left packages of cocaine on the side of the road for him;
and that Petitioner usually kept an ounce of cocaine stored in a
can of some kind.   JA 116.

**Robert Lee Smith** - an individual who was prosecuted as a co-
conspirator in the instant case and who testified under a plea
agreement - told the jury that he had operated a drug house in

6

Statesville, North Carolina, and that during the years of 1989 through 1992, he received weekly deliveries of multi-ounce packages of powder cocaine from Petitioner.  JA 87-89.  **Smith** also stated that he cooked the powder into crack and sold it from a house on his property.  JA 88.

**George Scott** - an individual who was prosecuted on drug charges in another case - testified that from 1989 through 1991, he purchased powder cocaine from Petitioner.  JA 151-52. **Scott** stated that he began purchasing small packages but worked his way up to ounce-sized purchases.  JA 152-54.  In addition, **Scott** purchased an ounce of cocaine from Petitioner in 1994.  JA 156. **Scott** also corroborated other witnesses, stating that he typically called to arrange transactions with Petitioner; and that he occasionally found leaves on the packages which he received from Petitioner.  JA 157.  However, **Scott** also testified that his initial small transactions with Petitioner often took place at Petitioner's home.  JA 157.

**Earl Gray** - an individual who was prosecuted on drug charges in another case - testified that Petitioner was one of the largest drug dealers in the Statesville area; that Petitioner and Corey Angle were partners; that Petitioner directed him (**Gray**) to purchase crack cocaine from Angle on the occasions when Petitioner had run out of drugs; and that on an occasion, **Gray** saw Petitioner at Corey Angle's residence, where **Gray** also saw seven

or eight two-pound plastic bags containing crack cocaine stacked behind a table.  JA 316-24, 327.  **Gray** stated that he dealt with Petitioner and Angle from 1992 through 1994, purchasing three to six-ounce sized packages at a time.  JA 324-25.  **Gray** also inadvertently made multiple sales of crack cocaine to an undercover federal agent on occasions in July 1994.  JA 328-31. The drugs which **Gray** sold had been supplied by Corey Angle.  JA 329.

**Robert Griffin** - an individual who was prosecuted on drug charges in another case - testified that in 1994, he purchased $300 to $400 dollars worth of cocaine powder from Petitioner and Corey Angle on two or three occasions; and that the most he ever purchased from Petitioner was two to three ounces of cocaine powder.  JA 187-90, 196.

At the conclusion of the Government's case, the Court granted defense counsel's Rule 29 motion to dismiss Counts Three and Seven (the gambling and firearm charges, respectively). Subsequently, the Indictment was redacted to exclude all references to the dismissed charges.

Petitioner presented a case-in-defense.  Petitioner took the stand and testified that he had supported himself over a six year period by working part-time at Vanderburg's Garage, driving race cars and from cheating in card games.  Trial Tr. 10-13. Petitioner even gave the jury demonstrations of his gambling skills and conceded that he had not filed any returns or paid any taxes on

his winnings.  Trial Tr. 13-21, 25, 29-31 and 43.  Petitioner explained that he had taken the Corvette and pickup trucks from **Cartledge** in partial payment for **Cartledge's** card gambling debts. Trial Tr. 23-25.

Petitioner told the jury that he was acquainted with the Angles because the brothers owned an auto detailing shop with which Vanderberg's Garage had done business, and Petitioner said he also gambled with them.  Trial Tr. 25.  Petitioner stated that he knew several of the witnesses who testified to having had drug deals with him, but he denied those deals and he denied knowing that they were drug dealers.  Trial Tr. 26-28 and 48-51.  Concerning the items which were found at his home, Petitioner testified that the rifle had been left by a former friend and he intimated that the pistols had been obtained for his adult children's protection.  Trial Tr. 26-27.  Petitioner also stated that he had used the police scanners to hear about what was happening in his community while he worked on cars.  Trial Tr. 26. Concerning the automobiles, Petitioner testified that the Corvette belonged to his brother and that one of the pickup trucks belonged to his mother.  Trial Tr. 33 and 46.  Last, Petitioner presented several witnesses who testified that they had gambled in card games with Petitioner, and that he had played very well and won lots of money.  JA 353-360.

At the conclusion of all of the evidence, the Court denied

Petitioner's renewed Rule 29 motion to dismiss the remaining charges. The Court ruled that the evidence offered in support of the conspiracy and money laundering charges was sufficient to warrant submission of those allegations to the jury. However, the Court withheld the two forfeiture charges to await the jury's decision on the underlying criminal violations.

After a day of deliberations, the jury convicted Petitioner and Corey Angle of the conspiracy charge and convicted Petitioner of the other four charges he was facing, but it acquitted John Angle of the conspiracy charge. Phifer I, 230 F.3d at 116. The jury also concluded that Petitioner's property was subject to forfeiture. Id.

On August 19, 1996, the Court held Petitioner's Sentencing Hearing. On that occasion, the Court determined that Petitioner could be held accountable for having trafficked in 29 kilograms of cocaine powder and three kilograms of cocaine base. JA 496. However, the Court concluded that Petitioner's correct Criminal History Category was I, not II as was recommended in the Pre-Sentence Report. JA 472. Thus, Petitioner's resulting Sentencing Guidelines range was 292 to 365 months. Ultimately, the Court sentenced Petitioner to a term of 292 months imprisonment. JA 498.

Petitioner directly appealed his case to the Fourth Circuit Court of Appeals. Petitioner argued that this Court had abused

its discretion in refusing to give his requested statute of limitations instruction. _Phifer_ I, 230 F.2d at 119. Petitioner also argued, based upon the then-newly decided case of _Apprendi v. New Jersey_, 530 U.S. 466 (2000), that this Court's drug quantity determinations had to be vacated because they were not supported by specific findings by the Court and, in any case, that the evidence was insufficient to support the imposition of a sentence for his involvement with cocaine base. _Phifer_ I, 230 F.2d at 121.

Upon its review, however, the Court of Appeals concluded that this Court's instruction, "taken as a whole, covered the point of law which [Petitioner] complain[ed] the district court misinstructed." _Id_. On the other hand, that panel found that Petitioner's _Apprendi_ argument had merit in that this Court had exceeded the 20-year statutory maximum term to which it was limited by virtue of the Indictment's failure to allege any drug quantities. _Id_. at 123-24. Therefore, _Phifer_ I vacated Petitioner's sentence and remanded his case for re-sentencing. _Id_. at 125.

Nevertheless, upon rehearing _en banc_, the Court of Appeals reversed the first panel's decision finding, instead, that this Court had not violated Petitioner's substantial rights by imposing a sentence which was longer than 20 years. _United States v. Phifer_, 254 F.3d 514, 517 (2001) ("_Phifer_ II" hereafter). More

11

particularly, the _Phifer_ II panel found that since Petitioner was convicted of three crimes which exposed him to a statutory maximum term of 60-years imprisonment and his Sentencing Guidelines calculations called for a range of 292 to 365 months, this Court was obligated to stack, or impose consecutive terms for each count until the Guidelines term was achieved, so long as that term did not exceed the aggregate statutory maximum term (60 years) for the multiple convictions. _Phifer_ II 254 F.3d at 518-19. Accordingly, the Court of Appeals affirmed Petitioner's sentence. _Id_. Last, the U.S. Supreme Court denied Petitioner's _certiorari_ petition thereby concluding his direct appeal. _United States v. Phifer_, 534 U.S. 937 (2001).

Thereafter, Petitioner returned to this Court on the instant Motion to Vacate arguing that: (1) this Court lacked jurisdiction to enter his conviction and judgment for three separate reasons; (2) he actually is innocent of the conspiracy charge; (3) he was denied a fair trial by the Government's improper comments and its misrepresentation of the law; (4) he was denied a fair trial due to the retroactive misjoinder of Counts Three and Seven; and (5)he actually is innocent of the money laundering charges. (Case 5:02CV62, document # 1).

Petitioner also claims that his former attorney was ineffective for: (1) having failed to challenge the Court's lack of jurisdiction; (2) having failed to properly argue on appeal the

"plain error" test; (3) having failed to argue Petitioner's actual innocence to the conspiracy charge; (4) having failed to argue that Petitioner was denied a fair trial by the Government's allegedly improper comments; (5) having failed to argue that Petitioner was denied a fair trial due to the prejudicial misjoinder of Counts Three and Seven; (6) having failed to seek a new trial on the basis of newly discovered evidence; (7) having failed to argue Petitioner's actual innocence of the money laundering charges; and (6) for having failed properly to explain the Government's plea offer along with the benefits or consequences of a jury trial. (<u>Id</u>.).

The Government filed a combined Response and Motion for Summary Judgment, denying that Petitioner is entitled to any relief on his claims (document # 10). Specifically, the Government argues that Petitioner's challenges to the Indictment, his <u>Apprendi</u> claim, his insufficiency of the evidence claims and his challenge to the calculation of his sentence all were decided against Petitioner on direct appeal; therefore, he is not entitled to re-litigate those matters in this collateral proceeding. (<u>Id</u>.). The Government further contends that Petitioner's claims concerning the prosecutor's comments and the allegedly retroactive misjoinder of Counts Three and Seven are procedurally barred. (<u>Id</u>.). Last, the Government argues that Petitioner's claims against counsel are baseless; consequently, the Government

asks the Court for a summary judgment.  (Id.).

On December 4, 2002, Petitioner filed a Reply and Response (document # 14), essentially reiterating his claims that this Court lacked jurisdiction for various reasons, and that he was prejudiced by his attorney's failure properly to argue the "plain error" claim (document # 14).  However, Petitioner concedes that one of his arguments –– that § 841 is unconstitutional –– is foreclosed by Fourth Circuit precedent, and that the Fourth Circuit also found that he had failed to show that the Apprendi error affected his substantial rights.  Petitioner also clarifies that his claim of improper prosecutorial comments actually "is a claim concerning whether [his] counsel was ineffective for failing to argue at the district level and on appeal the government's improper closing arguments . . . ."

Nevertheless, Petitioner disputes the Government's contentions that the Fourth Circuit already has rejected certain of his claims, and he challenges the Government's factual assertions in connection with his claim that counsel was ineffective for having failed to seek a new trial.  In addition, Petitioner reiterates his arguments that he actually is innocent of the conspiracy and money laundering charges and he denies that the Fourth Circuit tacitly rejected these claims in affirming his convictions.

On February 25, 2003, Petitioner filed a Response to the

Court's <u>Roseboro</u>[2] Order (document # 17). Such Response generally opposes the entry of summary judgment for the Government. On August 11, 2003, Petitioner filed a document captioned as "Petitioner Phifer's Extraordinary Memorandum Of Points And Authority In Support Of Motion To Set Case For Evidentiary Hearing/Declaration/Motion For Immediate Ruling Of The Record" (document # 20). This document asked for an evidentiary hearing so that Petitioner can present witnesses to establish his claim that he would have pled guilty but for counsel's allegedly erroneous advice.

Thereafter, on July 26, 2004, Petitioner filed a Motion to Amend his Motion to Vacate seeking to add a claim, based upon the then-recently announced decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), that this Court violated his Fifth and Sixth Amendment rights when it "enhanced his sentence" on the basis of factual determinations which were made under the preponderance of the evidence standard (document # 24). By Order of September 8, 2004, out of an abundance of caution, this Court allowed Petitioner to amend his Motion to Vacate to include the subject <u>Blakely</u> claim (document # 25).

On October 4, 2004, the Government filed an answer to the amended claim asserting that both <u>San-Miguel v. Dove</u>, 291 F.3d 257, 260 (4th Cir. 2002) and <u>United States v. Sanders</u>, 247 F.3d 139, 146 (4th Cir. 2001) hold that <u>Apprendi</u>, <u>Blakely's</u> pro-

---

[2]<u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

genitor, cannot be retroactively applied to cases on collateral review (document # 28).  Therefore, the Government argues that Petitioner's <u>Blakely</u> claim, by extension, also is barred.  (<u>Id</u>.).

On October 15, 2004, Petitioner filed a Reply contending that retroactivity is not at issue because his case had not become final prior to the announcement of the <u>Apprendi</u> decision (document # 29).  Therefore, Petitioner argues that since his claim is based on <u>Blakely</u>, which case simply clarified <u>Apprendi</u>, his claim presents no retroactivity problems. (<u>Id</u>.).

For its part, the Court carefully has considered all of the arguments along with the relevant legal precedent and has determined, as will hereafter be explained, that Petitioner is not entitled to any relief on his claims.

## II.  ANALYSIS

### 1.  **Petitioner's claims of actual, factual innocence are not reviewable by this Court**.

Taking his claims out of turn, Petitioner argues that he actually and factually is innocent of the conspiracy and money laundering charges in that the Government's witnesses all failed to establish that he was a member of a drug dealing conspiracy. Petitioner further contends that the Government failed to present evidence that the money used to purchase the subject vehicles came from a specific unlawful activity.  Wisely, Petitioner concedes that these two claims, in fact, are challenges to the

"sufficiency of the evidence." <u>See</u> Petitioner's Memorandum In Support Of [His] Motion To Vacate . . . " at pp. 24 and 46-47. (document # 4). As such, however, Petitioner is not entitled to any review of these matters.

Indeed, it must be kept in mind that in order to be cognizable on collateral review, a claimed error of fact must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." <u>United States v. Addonizio</u>, 442 U.S. 178, 186 (1979). Thus, "in the absence of circumstances indicating that a conviction is so devoid of evidentiary support as to raise a due process issue, the sufficiency of the evidence is not cognizable in a § 2255 attack." <u>Chandler v. United States</u>, 332 F. Supp. 397, 402 (D.C. Md. 1971).

The Fourth Circuit has cautioned against reviewing routine claims challenging the sufficiency of the evidence in § 2255 proceedings, stating that "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." <u>Taylor v. United States</u>, 177 F.2d 194 (4th Cir. 1949) (per <u>curiam</u>); <u>Sonnier v. United States</u>, 314 F.2d 69, 71 (4th Cir. 1963) (noting that attack on the sufficiency of the evidence typically is not cognizable under § 2255); <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (same). To put it another way, "[s]ection 2255 does not exist to correct erro-

neous factual determinations or to challenge the sufficiency of the evidence or to correct errors which should have been brought to the attention of the trial court or the appellate court on direct appeal." Neeley v. United States, 405 F. Supp. 1186, 1189 (W.D. Va. 1975), citing Sunal v. Large, 332 U.S. 174 (1947). Consequently, inasmuch as Petitioner has admitted that his "actual innocence" claims merely are challenges to the sufficiency of the evidence, and he has failed to show that his trial somehow was "irregular and invalid," he is not entitled to review of these claims.

In any case, even assuming that these claims are cognizable, they still are procedurally barred by the Fourth Circuit's decisions in Phifer I and Phifer II. In recounting the evidence supporting Petitioner's convictions in Phifer I, the Fourth Circuit stated:

> the record reveals eyewitness testimony and corroborating evidence of actual drug transactions involving Phifer and Angle on various occasions, in sum extending over a period of years. The record testimony is also complete from an eyewitness seller who sold the two vehicles to Phifer. An eyewitness also testified that Phifer often hid the cocaine in a can or similar container.
>
> . . . .
>
> Additionally, the prosecution introduced evidence buttressing the testimony of the eyewitnesses, including the incriminating evidence found in executing search warrants, palm prints of Phifer on a jar containing crack cocaine, sting operations . . . various

18

> income tax returns, pen registers . . . two
> police scanners and $2000 in currency found
> in executing a search of Phifer's bedroom.
> All this evidence tended to one degree or
> another to corroborate and state in greater
> detail the evidence of the various eye
> witnesses.
>
> In the summer of 1990, well within the time
> frame of the drug conspiracy, Phifer pur-
> chased two vehicles from co-conspirator Larry
> Cartledge – a red 1984 Corvette and a 1955
> Chevy pickup truck.  Phifer titled the two
> cars in the names of his mother and brother,
> respectively.  In the case of the 1955 Chevy
> pickup, Phifer apparently purchased a second
> 1955 Chevy pickup and switched license tag to
> prevent authorities from tracing the car.
> The jury found that the transactions were
> designed in part to conceal the fact that he
> was the true owner of the vehicles and con-
> victed Phifer of both counts of laundering
> monetary instruments.

230 F.3d 113 at 116-18.  Then, in _Phifer_ II, the _en banc_ Court

stated that:

> [e]vidence at trial established that Appel-
> lants supplied various drug dealers in the
> area of Statesville, North Carolina with
> cocaine and cocaine base. [Petitioner]
> supplied dealers with varying amounts of
> narcotics, ranging from a few ounces to
> several kilograms.

254 F.3d 514 at 516.

Notwithstanding the fact that Petitioner's appellate chal-

lenges to the sufficiency of the evidence were indirect in that

they were raised in the context of his attack on this Court's

sentencing calculations, the foregoing recitations make plain

that the questions were addressed and that the Circuit Court

found the convictions firmly supported by the record evidence.

It is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct review. <u>Davis v. United States</u>, 417 U.S. 333, 342 (1974); <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, inasmuch as Petitioner merely is seeking to revisit the sufficiency of the evidence supporting his convictions without directing the Court's attention to any intervening change in law which authorizes him to do so, these two claims are barred.

Furthermore, Petitioner's claim that counsel was ineffective for having failed to raise his sufficiency of the evidence claims is baseless. The record reflects that trial counsel made Rule 29 motions challenging the sufficiency of the evidence both at the close of the Government's case and at the close of all of the evidence. In fact, this Court granted the first motion as to the gambling and firearms charges, but found the evidence, indeed, was sufficient on the remaining charges. And, as was noted, counsel also invoked the appellate Court's review of the sufficiency of the evidence, albeit, in the context of Petitioner's sentencing challenge. Consequently, Petitioner's claim against counsel is factually baseless.

> 2. **<u>Petitioner's Blakely claim also must be rejected</u>**.

By his amended claim, Petitioner alleges that his Fifth and Sixth Amendment rights were violated when this Court "enhanced his sentence" on the basis of factual determinations which were made under the preponderance of the evidence standard, all in violation of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Petitioner further refutes the Government's assertion that he cannot bring this claim because <u>Blakely</u> is not subject to retroactive application in this proceeding. Rather, Petitioner contends that <u>Apprendi</u> was decided before his judgment became final; therefore, since <u>Blakely</u> merely is a clarification of <u>Apprendi</u>, he is not foreclosed by the general rules governing retroactive application of new rules on collateral review. Petitioner's argument, however, is not compelling.

That is, in <u>Lily v. United States</u>, 342 F.Supp. 2d 532, 537 (W.D. Va. 2004), the Court rejected an argument that <u>Blakely</u> merely clarified <u>Apprendi</u> and refused retroactively to apply <u>Blakely</u> on collateral review. <u>Lily</u> expressly held that "<u>Blakely</u> is a new procedural rule that does not meet the requirement of being a watershed rule of criminal procedure"; therefore, it cannot retroactively be applied in collateral proceedings, that is, to cases in which the criminal judgments already were final at the time that <u>Blakely</u> was announced. <u>Id</u>. at 538-39. <u>See also</u> <u>United States v. Fowler</u>, 133 Fed App'x 922, 922-23 (4th Cir. 2005) (denying request for authorization of successive motion to

21

vacate under 28 U.S.C. § 2244, finding that "neither <u>Booker</u> nor <u>Blakely</u> announced a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review."); <u>and</u> <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005) (holding that <u>United States v. Booker</u>, 543 U.S. 220 (2005), a post-<u>Blakely</u> opinion which, among other matters, made <u>Blakely</u> applicable to federal cases, is not retroactively applicable on collateral review).

Thus, because <u>Blakely</u> is not a clarification of <u>Apprendi</u>, but announces a new rule of constitutional procedure and Petitioner's appeal was final at the time that the <u>Blakely</u> opinion was handed down, <u>Blakely's</u> holding cannot be applied in this proceeding.  Therefore, this claim is not reviewable.

### 3. <u>**Petitioner's claim that the Court lacked jurisdiction also must be rejected**</u>.

Petitioner alleges that the Court lacked jurisdiction to enter its Judgment for three specific reasons.  Petitioner claims that the conspiracy statute, 21 U.S.C. § 841, is unconstitutional and void; that the indictment is defective because it failed to allege all of the elements of the offense; and that the Indictment was void because it was not presented in open court.

As to the first basis, the Fourth Circuit Court of Appeals repeatedly has rejected claims that § 841 was unconstitutional by virtue of <u>Apprendi</u>.  <u>See</u> <u>United States v. Collins</u>, 415 F.3d 304, 311 (4th Cir. 2005); <u>United States v. Randolph</u>, 167 Fed App'x

942, 948 (4th Cir. 2005); <u>United States v. McAllister</u>, 272 F.3d
228, 232 (4th Cir. 2001).  Other circuit courts also have
rejected this argument  <u>See</u> <u>United States v. Cernobyl</u>, 255 F.3d
1215, 1219 (10th Cir. 2001); <u>United States v. Martinez</u>, 253 F.3d
241, 256 n. 6 (6th Cir. 2001); <u>United States v. Brough</u>, 243 F.3d
1078, 1079-80 (7th Cir. 2001); <u>and</u> <u>United States v. Slaughter</u>,
238 F.3d 580, 582 (5th Cir. 2000) (<u>per curiam</u>).  Thus, in light
of this precedent, and the fact that Petitioner has acknowledged
the Fourth Circuit's position on this point, this argument must
be rejected.

Petitioner's argument that the Indictment was defective for
its failure to allege drug quantities also will not long detain
this Court.  In the case of <u>United States v. Cotton</u>, 535 U.S.
625, 630 (2002), the Supreme Court reversed the Fourth Circuit
and reaffirmed an earlier holding that to the extent the omission
of drug quantities can be called a defect in an indictment, such
defects "do not deprive a court of its power to adjudicate a
case." <u>See also</u> <u>United States v. Lamar</u>, 240 U.S. 60 (1916) (re-
jecting a claim that "the court had no jurisdiction because the
indictment does not charge a crime against the United States.").

As for Petitioner's claim that his Indictment was defective
because his docket sheet does not contain an entry reflecting
that the Indictment was returned in open Court as required by
Federal Rule of Criminal Procedure 6(f), that argument also must

be rejected. Presumably, this argument is aimed at Petitioner's Superceding Indictment as that is the Indictment under which he was tried and convicted.

In any case, the Court has determined that a Cassette Recording Log which is kept by the Clerk of this Court shows that on July 12, 1995, the Honorable Carl Horn, United States Magitrate Judge, conducted a proceeding during which he took grand jury returns. Not surprisingly, Petitioner's docket sheet shows that his Superceding Indictment was filed with this Court on that same date, July 12, 1995. While this information falls short of constituting an actual docket entry, it does tend strongly to suggest that Petitioner's Indictment was returned in accordance with Rule 6(f). See, e.g., United States v. Kensil, 295 F.2d 489 (3d Cir. 1961) (indictment valid where Clerk's minute sheet showed the court was in session on the date the indictment was returned).

More critically, Petitioner has based this argument solely upon the case of Renigar v. United States, 172 F. 646 (4th Cir. 1909). In Renigar, the Fourth Circuit dismissed an indictment for violation of Rule 6(f) because the indictment was not returned in open court but, instead, was given to a clerk while the Court was out of session. 172 F. at 657-58.

However, Renigar essentially was abrogated by the U.S. Supreme Court when it held that there is "no reason not to apply

[the harmless error analysis] to errors, defects, irregularities, or variances occurring before a grand jury just as we have applied it to such errors occurring in the criminal trial itself.") United States v. Mechanic, 475 U.S. 66, 78 (1986) (internal quotations omitted). See also Bank of Nova Scotia v. United States, 487 U.S. 250, 254-57 (1988) (errors in the grand jury indictment procedure are subject to harmless error analysis unless "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair"); and United States v. Lennick, 18 F.3d 814, 817 (9th Cir. 1994) (recognizing abrogation of Renigar by Mechanic and Bank of Nova Scotia and affirming district court's refusal to dismiss indictment where handing of indictment to clerk when court was out of session was the "functional equivalent" of presenting indictment in open court).

Here, Petitioner does not even bother to argue that the grand jury proceeding was compromised or that he somehow was prejudiced by the supposed violation of Rule 6(f). Thus, because the Supreme Court has said that "as a general matter, a district court may not dismiss an indictment for errors in the grand jury proceedings unless such errors prejudiced the defendants," This claim must be rejected. Likewise, in the absence of any evidence of prejudicial harm, it goes without saying that Petitioner has failed to show that counsel was ineffective for having chosen not

to raise these baseless challenges to the Indictment.

**4. <u>Petitioner's claims of prosecutorial misconduct and retroactive misjoinder also must be rejected</u>**.

Petitioner argues that the Government made prejudicial and misleading remarks during its closing argument, thereby depriving him of a fair trial; and that the eventual dismissal of the gambling and firearms charges constituted retroactive misjoinder, thereby exposing him to the effects of highly prejudicial testimony.  Once again, Petitioner also claims that his attorney was ineffective for having failed to raise these challenges.

The Court's reporter was unable to transcribe the Court's jury instructions, JA 402; however, the Court has reviewed the parties' appellate Joint Appendix which contains a copy of its written jury instructions.  The Court's review reflects, consistent with the parties' proposed instructions, that the Court gave instructions which were intended to counteract the impact of any inappropriate remarks which may have been made by either of the attorneys and it gave instructions which were intended to counteract the impact of the extraneous evidence which was presented on the dismissed charges.

For instance, the Court told the jury that it could not consider any information to which a party had objected and for which such an objection had been sustained and it could not consider any information which the Court told it to disregard.  JA 619.

The Court told the jury that the gambling and firearms charges no longer were of any concern to the jury. JA 597. The jury also was told that the attorneys' arguments did not constitute either evidence or law; that the Court would instruct the jury on the law and the jury would be duty-bound to apply that law; that it was the jury's exclusive province to find the true facts of the case based upon each jury member's own recollection of the evidence; and that the defendants were not on trial for any conduct which may have been discussed but was not part of the Indictment. JA 595-96 and 655.

The Court also advised the jury of Petitioner's presumption of innocence; that the burden of proof for each and every element rested solely with the Government; that the jury was to determine the credibility of the witnesses; that witnesses who also were convicted felons could be discredited or impeached by the fact of those convictions; and that the jury should be cautious in weighing the testimony of purported accomplice/co-conspirators and/or drug and alcohol abusers. JA 601-03, 610-11, 613-17. Additionally, the Court defined numerous matters to the jury, including the elements of the offenses, and the terms "reasonable doubt," circumstantial and direct evidence. JA 608.

Once explanatory and curative instructions are given, the jury is presumed to be capable of following them, "absent some strong indication that the evidence is so powerful that a jury

could not ignore it and that the defendant would be harmed as a result." <u>United States v. Jones</u>, 907 F.2d 456, 460 (4th Cir. 1990); <u>accord</u> <u>Yates v. Evatt</u>, 500 U.S. 391, 403 (1991) (noting "sound presumption of appellate practice, that jurors are reasonable and generally follow the instructions as they are given.").

Notably, Petitioner does not address the fact that the jury properly was instructed concerning stray remarks and the admission of the extraneous evidence. Likewise, Petitioner does not attempt to show that the jury ignored said instructions. In the absence of such showings, therefore, Petitioner cannot establish that he is entitled to any relief on these claims. Nor can Petitioner establish any prejudice due to counsel's decision not to challenge these matters.

> **5. <u>Petitioner's three remaining claims of ineffective assistance of counsel also are baseless</u>.**

By his last three claims, Petitioner argues that counsel was ineffective for having failed to seek a new trial on the basis of certain "newly discovered evidence," to properly argue the "plain error" test on appeal, and for having given him erroneous information concerning whether or not to proceed to a jury trial.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced

thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).
In making this determination, there is a strong presumption that
counsel's conduct was within the wide range of reasonable pro-
fessional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney</u>
<u>Gen'l. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>,
474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31
(4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo</u>
<u>v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S.
1011 (1978).

Furthermore, in considering the prejudice prong of the
analysis, the Court must not grant relief solely because a peti-
tioner can show that, but for counsel's performance, the outcome
of the proceeding would have been different.  <u>Sexton v. French</u>,
163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855
(1999).  Rather, the Court "can only grant relief under . . .
<u>Strickland</u> if the 'result of the proceeding was fundamentally
unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506
U.S. 364, 369 (1993).

To put it another way, in order to demonstrate prejudice, a
petitioner must show a probability that the alleged errors worked
to his "actual and substantial disadvantage, infecting his trial
with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477
U.S. 478, 494 (1986), <u>citing</u> <u>United States v. Frady</u>, 456 U.S.
152, 170 (1982).  Under these circumstances, then, the petitioner

"bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. Therefore, if the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Petitioner claims that counsel was ineffective for failing to seek a new trial on the basis of newly discovered evidence. In support of his claim, Petitioner points to the Affidavit of Jeffrey Myers, which was executed on January 21, 1997.

In that Affidavit, Mr. Myers states that during the course of Petitioner's trial in 1995, he encountered five of the eight co-conspirator witnesses who testified against Petitioner while they all were being transported from the County Jail to this federal courthouse. (See 5:02CV62, document # 10: Government's Response and Motion for Summary Judgment, Exhibit # 4, Attachment # 2 at 1-2). Mr. Myers also states that he was well-acquainted with those witnesses. (Id. at 2).

Myers said that the witnesses told Myers during their drive to court, of their intention to testify against Petitioner; that their cooperation with the Government was motivated by their desire to secure reduced sentences or other benefits for themselves; and that law enforcement officers had scripted their testimony. (Id. at 3-5). Myers' Affidavit also stated that on a subsequent occasion, he again encountered one of those witnesses

at USP Atlanta; that the witness stated that he had not wanted to lie on Petitioner; and that the witness repeated that he merely had given the testimony that the authorities wanted him to give. (Id. at 8).

In response, the Government submitted an Affidavit from Petitioner's former attorney. (5:02CV62, document # 10: Government's Response and Motion for Summary Judgment, Exhibit # 4). Counsel states that he had not sought a new trial on the basis of the Myers Affidavit because, in his opinion, the Affidavit was insufficient to warrant a new trial. (Id. at 3). Counsel reports that although he had grave doubts about the veracity of many of the witnesses who implicated Petitioner, he "ha[d] absolutely no reason to believe that the prosecutors handling this case had any involvement in placing untruthful testimony before the jury." (Id.).

The Fourth Circuit has said that a district court should exercise its discretion to grant a new trial based upon newly discovered evidence only when: (1) the evidence is newly discovered; (2) the movant exercised due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues; and (5) the evidence would probably result in an acquittal at a new trial. United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987); see also United States v. Chavis, 880 F.2d 788, 793 (4th

Cir. 1989) (noting that defendant must establish each of the five elements). Applying the <u>Bales</u> factors, in <u>United States v. Custis</u>, 988 F.2d 1355, 1359 (4th Cir. 1993), the Fourth Circuit reversed a district court's grant of a new trial upon a finding that the newly discovered evidence -- that the two primary law enforcement witnesses in the defendant's case had been indicted for perjury in connection with an application for a search warrant in another case -- merely had impeached the officers' trial testimony.

In the instant case, the evidence upon which Petitioner relies, at best, would merely have impeached the testimony of the witnesses in question. However, Mr. Myers' information would not have had any impact on the other eye witnesses' testimony, the law enforcement officers' testimony or the documentary evidence which was presented against Petitioner. Consequently, Petitioner cannot establish that he was prejudiced by counsel's decision not to seek a new trial on the basis of Mr. Myers' information.

Nor can Petitioner establish any prejudice on his claim that counsel failed properly to argue the "substantial rights" prong of the "plain error" test. According to Petitioner, counsel should have shown that his substantial rights adversely were impacted because his sentences were not "stackable" and, even if they were, his Guidelines range for the drug offense should have been calculated on the basis of his involvement with less than

500 grams of cocaine powder, not cocaine base.  However, Petitioner's arguments miss the mark.

First, in Phifer II, the Court of Appeals expressly found, pursuant to U.S. Sentencing Guidelines § 5G1.2(d), that Petitioner's sentences were stackable.  254 F.3d at 518.  And, contrary to Petitioner's argument, the Forth Circuit continues to approve of the application of §5G1.2(d) to "stack" multiple consecutive sentences to achieve a sentence within the Guidelines range. See, e.g., United States v. Allen, 491 F.3d 178, 195 (4th Cir. 2007); United States v. Garris, 264 Fed. App'x 290, 292-93 (4th Cir. Feb. 15, 2008) (unpublished) (approving of post-Booker stacking under § 5G1.2(d)); and United States v. Battle, 174 Fed. App'x 179, 181-82 (4th Cir. April 5, 2006) (unpublished) (same). Thus, in light of Petitioner's failure to point this Court to any intervening change in the law which holds that § 5G1.2 (d) no longer can be applied, this issue cannot be revisited.

Second, Petitioner's argument relies, in part, upon the Circuit Court's footnote in Phifer II where the Court intimated that if he had demonstrated that "a refusal to vacate his sentence and order re-sentencing could in some way affect his substantial rights . . . ," he might have been entitled to relief on his claim.  254 F.3d at 518 n. 2.  However, this Court does not believe that the Circuit Court's dicta, without more, can somehow be construed as a cryptic message that Petitioner's

33

counsel should have couched his "plain error" argument in different language.  Moreover, even if the Circuit Court would have been inclined to vacate Petitioner's sentence had counsel raised a different argument, any such victory likely would have been short-lived by Petitioner.

Indeed, in United States v. Cotton, 261 F.3d 397, 405-06 (4th Cir. 2001), the Court vacated several of the defendants' sentences on the ground that it was plain error for the district court to have imposed sentences in excess of 20 years based upon judge-made findings, and that such error affected the defendants' substantial rights.  However, the Supreme Court reversed that determination, finding that although the trial court plainly erred and such error may have affected the defendants' substantial rights, re-sentencing was not required because the error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings."  United States v. Cotton, 535 U.S. 625, 629-31 (2002).  That is, the Supreme Court determined that by enacting graduated penalties under 21 U.S.C. § 841, "Congress intended that defendants . . . involved in large-scale drug operations receive more severe punishment than those committing drug offenses involving lesser quantities"; therefore, "the fairness and integrity of the criminal justice system depends on meting out to those inflicting the greatest harm on society the most severe punishments."  Id. at 634.  In sum, the Court said

34

that "the real threat to the fairness, integrity and public reputation of judicial proceedings . . ." would be if the <u>Cotton</u> defendants received a lower sentence than the evidence required under a "plain error" analysis. <u>Id</u> (internal quotations and citation omitted).

In the instant case, the Fourth Circuit already has found that the eyewitness and law enforcement testimony along with the corroborating evidence was sufficient to support Petitioner's sentence. Such evidence appears to be comparable to the evidence presented in <u>Cotton</u>. Thus, even if counsel had succeeded on appeal, <u>Cotton</u> strongly suggests that he likely would have lost his battle at the Supreme Court. Consequently, Petitioner cannot show any prejudice in connection with this argument.

Petitioner also claims that counsel should have argued that the jury's verdict was ambiguous as defined in <u>United States v. Rhynes</u>, 196 F.3d 207 (4th Cir. 1999), <u>vacated in part on other grounds on reh'g en banc</u>, 218 F.3d 310 (4th Cir. 2000); therefore, this Court was limited to sentencing him on the basis of involvement with the least-punished drug, powder cocaine. However, <u>Rhynes</u> is inapplicable here.

In <u>Rhynes</u>, the defendants were charged with having conspired to traffic in heroin, cocaine, cocaine base <u>and</u> marijuana. 196 F.3d at 214. However, the jury was instructed that it could convict the defendants on the conspiracy charge if it found that

they had conspired to "distribute or possess with intent to distribute heroin, <u>or</u> cocaine, <u>or</u> cocaine base <u>or</u> marijuana." <u>Id</u>. at 237 (emphasis added). Thus, the Court of Appeals determined that in light of the disjunctive nature of the jury charge, the absence of any indication as to whether the jury had found that the defendants' conspiracy involved all or just one of the named drugs, and the fact that different statutory maximum penalties were applicable to the different drugs, the district court was prohibited "from imposing a sentence in excess of the statutory maximum for the least-punished object on which the conspiracy conviction could have been based." <u>Id</u>. at 238.

In the present case, however, this Court did not use disjunctive language in its conspiracy charge. Rather, unlike in <u>Rhynes</u>, this Court instructed the jury that Petitioner was charged with conspiring to possess with intent to distribute cocaine powder <u>and</u> cocaine base; and that in order to return a guilty verdict, it had to find proof beyond a reasonable doubt of each element of the offense, including the elements that Petitioner had knowingly, intentionally, willfully and unlawfully possessed with intent to distribute cocaine <u>and</u> cocaine base. JA 626-27, 634 and 644. Indeed, the jury expressly was told "[u]ltimately the government must prove beyond a reasonable doubt that a conspiracy was wilfully formed and had, as its purpose, the possession of cocaine and cocaine base with the intent to distri-

bute it." JA 634.

Therefore, there simply was no <u>Rhynes</u> error here because the Court's instruction leaves no room for doubt that Petitioner was found to have trafficked in both powder cocaine and cocaine base. <u>See</u> <u>United States v. Cotton</u>, 261 F.3d 397, 402 (4th Cir. 2001) (finding no reversible error where jury was "unambiguously instructed that a conspiracy conviction could be based only upon a finding -- as charged by the government in the indictment -- that appellants conspired to distribute or possessed with intent to distribute cocaine hydrochloride <u>and</u> cocaine base" (emphasis in original), <u>rev'd on other grounds</u>, 535 U.S. 625 (2002). <u>See also</u> <u>United States v. Mackins</u>, 315 F.3d 399, 415-16 (4th Cir. 2003) (declining to notice error which was virtually identical to <u>Rhynes</u> because evidence of defendants' involvement with both drugs was "overwhelming and essentially uncontroverted)"; <u>and</u> <u>United States v. Bowens</u>, 224 F.3d 302, 315 (4th Cir. 2000) (same).

Finally, Petitioner's last claim against counsel -- that he rejected the Government's plea offer and proceeded to trial based upon erroneous advice from counsel -- also is doomed.

By this claim, despite his continued protestations of actual innocence, Petitioner contends that had his attorney accurately apprised him of his correct sentencing exposure and the evidence which he was facing, he would have accepted the Government's

offer for a ten-year sentence.  Consequently, Petitioner asks the Court to "reinstate" the Government's "original plea offer so that he can plead under it."

Suffice it to say that the Court finds it ironic, to say the least, that Petitioner continues to challenge the sufficiency of the evidence which convicted him while also claiming that had counsel told him about that evidence, he would have accepted the Government's plea offer.  Indeed, if Petitioner still does not believe that the subject evidence was strong after having heard the testimony for himself, the Court finds it hard to believe that he would have relied upon counsel's representations about that evidence prior to trial.

In any case, in addressing this claim, trial counsel's Affidavit concedes that he did not inform Petitioner of the maximum term which he could face upon conviction.  However, counsel does assert that he informed Petitioner of the two plea offers, and that he explained the advantages and disadvantages of entering a guilty plea. Counsel also asserts that Petitioner would not even consider pleading guilty as he had maintained his actual innocence on all charges.

Notwithstanding the fact that counsel admittedly did not advise Petitioner of his maximum exposure, the record establishes that the Court twice informed him of those matters during his two arraignment proceedings which took place on January 23, 1995 and

July 27, 1995.  (Case 5:94CR41, document ## 32 and 79).  There-
fore, the Court must conclude that at the time when Petitioner
rejected the Government's offers, he was aware of his exposure
but chose to rely upon counsel's supposed report that he only was
facing a 15-year sentence.  When Petitioner decided to ignore the
Court's information, he did so at his own peril.

Furthermore, Petitioner cannot obtain any relief on his
assertion that he rejected the Government's offer because counsel
was against Petitioner's accepting it.  Indeed, in <u>Jones v.
Murray</u>, 947 F.2d 1106, 1109-11 (4th Cir. 1991), the Fourth Cir-
cuit concluded that a defense attorney's failure to recommend the
acceptance of a plea offer to two terms of life imprisonment in a
case where the defendant faced the death penalty did not consti-
tute ineffective assistance.  On the contrary, the <u>Jones</u> Court
stated that counsel's performance was not deficient since counsel
notified his client of the plea offer and counsel informed his
client of the terms of that offer.  <u>Id</u>. at 1110-1111.

Applying <u>Jones</u> to the facts here, this Court finds that even
if counsel was deficient for having misjudged the strength of the
Government's case and not having recommended that Petitioner
accept the plea offer, Petitioner cannot establish any prejudice
on this record.  Rather, Petitioner's supporting Memorandum shows
that defense counsel told him about the existence of the Govern-
ment's plea offers and their terms, and that counsel informed

39

Petitioner about the witnesses he likely would face at trial. Thus, even if counsel misjudged the potential damage from that testimony, Petitioner was in the best position to judge for himself the nature and quality of the evidence he could expect to face.

Additionally, it is noteworthy that even as late as the time of Petitioner's sentencing hearing -- that is, after he had been convicted and had learned that the Probation Officer was recommending a sentence in the range of 324 to 405 months –- he still told the Court that he "d[idn't regret coming to trial because [his] family came [to Court]." JA 498. In fact, at the conclusion of that proceeding when counsel told the Court that Petitioner wanted an appeal and would need appointed counsel, Petitioner remained silent when counsel indicated that he was willing to handle that appeal. JA 499. Under these circumstances, Petitioner's conduct tends to undermine his belated, self-serving assertion that but for these alleged failures of counsel, he would have accepted the Government's offer for a 10-year deal. In sum, the Court finds that Petitioner was not misled but had all of the relevant information he needed to inform his decision on whether or not to proceed to a jury trial; and that he made the choice to proceed to trial of his own volition.

## III.  <u>CONCLUSION</u>

The record of this matter reflects that several of Peti-

tioner's claims are procedurally barred and/or otherwise foreclosed from this Court's review.  Furthermore, the record evidence stands as a formidable obstacle to his belated claims of ineffective assistance of counsel.  Therefore, the Court finds that the Government's Motion for Summary Judgment should be granted, and that Petitioner's Motion to Vacate should be denied and dismissed.

**IV. ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Government's Motion for Summary Judgment (document # 10) is **GRANTED;** and

2.  Petitioner's Motion to Vacate (document ## 1 and 24) is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: September 15, 2008

Richard L. Voorhees
United States District Judge